UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                              :
UNITED STATES OF AMERICA,          :          CASE NO. 1:03-CR-431-2
                                              :                   1:07-CV-871
                  Plaintiff,                  :
                                              :
vs.                                           :          ORDER & OPINION
                                              :          [Resolving Doc. No. 283, 289, 292, 293]
STANLEY CORNELL,                      :
                                              :
                  Defendant.                  :
                                              :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On March 23, 2007, Defendant Stanley Cornell filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  [Doc. 283.]  With his motion, Cornell seeks to vacate, set aside, or correct the sentence imposed by the United States District Court for the Northern District of Ohio following Cornell's conviction at a jury trial of conspiracy to possess with intent to distribute cocaine, possession with intent to distribute and distribution of cocaine, and use of a telephone to distribute cocaine. [*See* Doc. 315 at 1.]  Defendant Cornell has also filed a motion for leave to supplement his § 2255 motion [Doc. 289]; a motion to compel discovery related to the proposed supplement [Doc. 292]; and a motion for the recusal of the Assistant United States Attorney on the case [Doc. 293].

The Government has responded to Cornell's original § 2255 motion, [Doc. 287]; his motion to supplement [Doc. 290]; his motion to compel discovery [Doc. 296]; and his motion for recusal [Doc. 296].  Defendant Cornell replied to all of the above. [Docs. 288, 291, 301, respectively.]  This Court referred the case to Magistrate Judge William H. Baughman, Jr., under Local Rule 72.1. [Docs. 284, 285.]   On March 17, 2009, Magistrate Judge Baughman filed a Report and

Case No. 1:03-CR-431-2; 1:07-CV-871
Gwin, J.

Recommendation.  [Doc. 330.]  With that Report and Recommendation, the Magistrate Judge recommends that this Court dismiss in part and deny in part Cornell's motions.  Cornell objected to the Magistrate Judge's findings. [Doc. 331.][1/]  For the reasons provided below, the Court **ADOPTS** the Magistrate's Report and Recommendation, and **DENIES** Defendant Cornell's § 2255 motion [Doc. 283]; **DENIES** Cornell's motion to supplement the § 2255 motion [Doc. 289]; **DENIES** Cornell's motion for the recusal of the AUSA, [Doc. 293]; and **DISMISSES IN PART** as moot and **DENIES IN PART** Cornell's motion to compel discovery. [Doc. 292.]

## I. Background

On November 19, 2003, a grand jury returned a 13-count indictment against Defendant Cornell and eight other defendants.  The grand jury indicted Cornell on the following three counts: (1) conspiracy to possess with the intent to distribute more than 50 grams of cocaine base and/or more than 5 kilograms of cocaine powder in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846; (2) possession with intent to distribute and distribution of approximately 154 grams of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); and (3) use of a telephone to facilitate drug trafficking in violation of 21 U.S.C. § 843(b). [Doc. 1.]

On February 25, 2004, Defendant Cornell and co-defendant Norman Pomales' jury trial commenced in this Court. [Doc. 153.] At trial, Drug Enforcement Agency Special Agents Lee Lucas and John Clayton gave testimony for the government.  Special Agent Clayton and Darrel Pinson, an informant, described the controlled buy they set with Cornell and resulted with the police seizing the 154 grams of cocaine charged in count two of the indictment.  Jason Hager, Randall Allman, Paul

---

[1/]Cornell filed his objection on April 6, 2009, a week after the March 31, 2009 deadline for filing.  Although Cornell claims he filed a "Motion for Enlargement of Time to File Objections" on March 24, 2009, [Doc. 331 at 1 n.1], no such filing was ever docketed.  Nonetheless, the Court considers Cornell's objections and conducts *de novo* review.

Case No. 1:03-CR-431-2; 1:07-CV-871
Gwin, J.

Sinatra, Rick Sanders and Lance Hartman, five persons named in the indictment as co-conspirators but not defendants, also gave testimony regarding the conspiracy count.  Furthermore, Benny Ingram, Jason Lilly, Dwayne Washington and Michael Richardson also testified about the conspiracy charge. Defendant Cornell called no witnesses.  On February 27, 2004, a jury returned a verdict of guilty on all counts against Cornell. [Doc. 156.]

Before trial, the United States filed an information pursuant to 21 U.S.C. § 851, invoking the enhanced sentencing provisions in 21 U.S.C. §§ 841(b)(1)(A) and 841(b)(1)(C).  Before this case, Cornell had at least two prior felony drug offense convictions, including convictions for distribution of cocaine in the United States District Court and conviction for trafficking in drugs in the Cuyahoga County Common Pleas Court.  On May 13, 2004, the Court sentenced the Defendant to the mandatory minimum, life without parole, on count one, 360 months of incarceration on count two, and 48 months of incarceration on count three, to run concurrently. [Doc. 217.]

On May 14, 2004, Defendant Cornell filed a timely notice of appeal to the Sixth Circuit Court of Appeals. [Doc. 218.]   On January 3, 2006, the Court of Appeals affirmed Cornell's conviction and sentence. [Doc. 266.] On April 3, 2006, Cornell petitioned for a writ of certiorari to the United States Supreme Court. [Doc. 276.]  The Supreme Court denied the petition on October 2, 2006. [Doc. 281.]

On March, 18, 2008, the Defendant filed a motion for a judgment of acquittal or a new trial [Doc. 300], which he later amended [Doc. 304].  In the motion, Cornell alleged the following claims: (1) the conduct of Special Agent Lucas warrants a new trial; (2) the United States failed to establish the proper foundation, and/or a proper chain of custody, for the admittance of the 154 grams of cocaine; (3) the United States presented perjured and misleading testimony to sustain counts two and

-3-

Case No. 1:03-CR-431-2; 1:07-CV-871
Gwin, J.

three; (4) the court impermissibly instructed the jury; (5) based upon prosecutorial misconduct a new

trial must be granted; and (6) counsel provided ineffective assistance of counsel. [*Id.*]

On July 25, 2008, the Court denied the Defendant's motion for a judgment of acquittal or a

new trial. [Doc. 315.] The Court rejected the claim for a new trial based on the involvement of DEA

Agent Lucas, because the new evidence would not likely lead to an acquittal, given Lucas' limited

testimony and the extensive testimony of many others against Cornell. [*Id.* at 9.]  Further, the Court

declined to address the Defendant's prosecutorial misconduct claim, deeming it properly evaluated

in the § 2255 forum. [*Id.*] Finally, the Court held that the Defendant's remaining claims regarding

ineffective assistance of counsel, chain of custody, and jury instructions were time-barred under

Rules 29 and 33 and did not warrant a Rule 45 time extension. [*Id.* at 10.] Cornell moved for

reconsideration, but that, too, was denied. [Doc. 319.]

## II. The Instant Motions

In support of the instant § 2255 motion, Cornell raises three grounds, all related to alleged

discrepancies between the grand jury testimony of DEA Agent Clayton and the Agent's previous

Investigation Report.[2/]  The grounds are that 1) "the government denied movant his right to due

process and fundamental fairness when it used false testimony to convict him;" 2) "trial counsel was

ineffective for failing to investigate [any discrepancies];" and 3) "trial counsel was ineffective for

failing to impeach Agent Clayton on his prior . . . inconsistent statement." [Doc. 283 at 4.]  The

United States opposed Cornell's motion, [Doc. 287], and the Defendant replied to that opposition,

[Doc. 288].

---

[2/]As discussed below, the discrepancy at issue is actually between Agent Clayton's *trial* testimony and his
previous Investigation Report.  *See infra* note 4.

Case No. 1:03-CR-431-2; 1:07-CV-871
Gwin, J.

In his motion for leave to file a supplemental motion, Defendant Cornell seeks to add a fourth claim for relief to the original § 2255 motion.  Cornell alleges that DEA agent Lee Lucas committed perjury during Cornell's trial, as a result of prosecutorial misconduct, thereby "render[ing] the entire trial fundamentally unfair." [Doc. 289 at 2.] In his motion to compel discovery, Cornell seeks all records relating to DEA Agents Clayton and Lucas. [Doc. 292.] Finally, in his motion for the recusal of the AUSA on the case, Cornell argues that the Government's attorney should be recused for knowingly proffering testimony that varied from Agent Clayton's previous report. [Doc. 293.]  The United States opposed all these motions, [Docs. 290, 296], and Defendant Cornell replied, [Docs. 291, 301].

On March 17, 2009, Magistrate Judge William H. Baughman, Jr., filed a Report and Recommendation that recommended the Court dismiss, as procedurally defaulted, Defendant Cornell's first ground for relief in his § 2255 motion. [Doc. 330.] The Magistrate Judge found that Cornell failed to raise the issue on direct appeal despite being aware of the issue, and that failure cannot be attributed to ineffective assistance of counsel. [Id. at 24-25.] Further, the Magistrate Judge recommended the Court deny the Defendant's second and third grounds for relief in the § 2255 motion. [Doc. 330.]  The Magistrate Judge found that Cornell had not met his burden of demonstrating that his counsel was ineffective under the *Strickland v. Washington* standard because he had made no showing of either deficient performance or prejudice.  [Id. at 26-27.]

With respect to the motion to supplement the § 2255 motion, Magistrate Judge Baughman found the motion was actually a motion to amend the existing § 2255 motion to include a new claim. The Magistrate Judge recommended the motion to supplement be denied because the claim would be insufficient to set aside Cornell's conviction, given the other testimony against him. [Id. at 20-21.]

Case No. 1:03-CR-431-2; 1:07-CV-871
Gwin, J.

The Magistrate Judge also noted that the motion to compel discovery related to Agent Lucas is moot if the motion to supplement is denied.  Regardless, the motion to compel discovery should be denied because the Government has already provided Cornell with most of what he seeks and is under no obligation to provide more. [Id. at 22-23.] Finally, Magistrate Judge Baughman recommended that the Court deny Cornell's motion seeking recusal of the AUSA because the Government did not conceal any of the alleged inconsistencies. [Id. at 17-19.]

Defendant Cornell objects to all of the Magistrate Judge's findings, and states that the Magistrate Judge conflated his various grounds for relief.[3/] [Doc. 331.] Generally, he disputes the Magistrate Judge's conclusion that the discrepancies between Agent Clayton's testimony and his previous report amount merely to inconsistencies. [Id. at 9-10.]  Based on this general error in construing the significance of Clayton's testimony, Cornell urges the Court to consider the issue *de novo*.

With respect to his first ground for relief in his § 2255 motion, Cornell argues that the claim should not be dismissed as procedurally defaulted because the Magistrate Judge did not properly consider his ineffective assistance of counsel argument as "cause" for the default. [Id. at 7-8.] On the second and third grounds for relief, both based on ineffective assistance of counsel, Cornell points out that he was alleging ineffectiveness not just because his counsel failed to discredit Agent Clayton's testimony, but because his counsel failed to object to the Government's untimely

---

[3/]While Cornell asserts that the Magistrate Judge's Report and Recommendation is "layed-out in a rather confusing format and conflates some of [his] grounds for relief," [Doc. 331 at 11], the Court notes that Cornell's objections are confusing in terms of organization.  Here, the Court attempts to match Cornell's objections to the Magistrate Judge's findings, and also consider more general objections.

Case No. 1:03-CR-431-2; 1:07-CV-871
Gwin, J.

disclosure of Clayton's previous Investigation Report[4/] and failed to request a continuance to investigate the new information. [Id. at 10.] Cornell argues that these failures amounted to deficient performance and could not be explained as strategic. [Id. at 10-11.]

With respect to his motion to amend his § 2255 motion with an additional ground related to Agent Lucas, Cornell argues that although the Court deemed those claims "speculative" in past decisions, Cornell "should now be able to use the fact development procedures applicable to § 2255 proceedings to prove his allegations related to Agent Lucas." [Id. at 4.] Further, even if Lucas' testimony would have had limited impact on the outcome of Cornell's trial, the Defendant urges the Court not to "compartmentalize" Agent Lucas' and Agent Clayton's alleged misconduct, but rather consider the combined effect of both, and apply the liberal standard for allowing amendments under Rule 15(a). [Id. at 4-5.] Additionally, Cornell reiterates his arguments for additional discovery, objecting to the standard used by the Magistrate Judge, and arguing that he should be allowed to access information to substantiate his § 2255 allegations.  [Id. at 3, 6.] Although he does not directly object to the Magistrate Judge's conclusion on the motion for recusal of the AUSA, Cornell again argues that the AUSA knowingly presented false testimony, failed to correct the testimony, and did not disclose Clayton's previous report until it was too late. [Id. at 8-9.] Finally, Cornell objects to the denial of an evidentiary hearing because there are allegedly "numerous material factual disputes" that, if resolved in the Defendant's favor, would entitle him to relief under § 2255. [Id. at 13-15.]

### III. Legal Standard

*A. Federal Magistrates Act*

---

[4/]The Government provided defense counsel with *Brady* and *Jencks* material just before the start of trial.  [Doc. 237 at 5.]

Case No. 1:03-CR-431-2; 1:07-CV-871
Gwin, J.

The Federal Magistrates Act requires a district court to conduct a de novo review only of those portions of a Report and Recommendation to which the parties have made an objection. 28 U.S.C. § 636(b)(1). Parties must file any objections to a Report and Recommendation within ten days of service.  *Id.*  Failure to object within that time waives a party's right to appeal the magistrate judge's recommendation.  *See* Fed. R. Civ. P. 72(a); *Thomas v. Arn*, 474 U.S. 140, 145 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Absent objection, a district court may adopt the magistrate's report without review.  *Thomas*, 474 U.S. at 149.

*B. Section 2255*

Section 2255 gives a federal prisoner post-conviction means of collaterally attacking a conviction or sentence that he alleges to be in violation of federal law.  *See In re Gregory*, 181 F.3d 713, 714 (6th Cir. 1999).  Section 2255 provides four grounds for a challenge to a conviction or sentence: (1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence exceeded the maximum authorized by law; or (4) that the sentence is otherwise subject to collateral attack.  *Hill v. United States*, 368 U.S. 424, 426-27 (1962); 28 U.S.C. § 2255.

To prevail on a § 2255 motion alleging a constitutional error, the movant "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings."  *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).  To prevail on a  § 2255 motion alleging a non-constitutional error, the movant must establish a "'fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process.'"  *Id.* ((citing *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (citing *Hill*, 368

-8-

Case No. 1:03-CR-431-2; 1:07-CV-871
Gwin, J.

U.S. at 428)).

The Court can summarily deny a motion to vacate if it plainly appears from the face of the motion and any annexed exhibits that the movant is not entitled to relief. *Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003). Otherwise, the Court must hold an evidentiary hearing to determine the truth of movant's claims. *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir.2007). A § 2255 petitioner's "burden 'for establishing an entitlement to an evidentiary hearing is relatively light.'" *Smith*, 348 F.3d at 550. Nevertheless, the Court need not hold a hearing if the movant's allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions rather than statements of fact. *Valentine*, 488 F.3d at 333.

IV. Analysis

*A. General Objection - Characterization of Discrepancies*

Although not directed specifically towards any of the Magistrate Judge's conclusions, Cornell generally objects to the Magistrate Judge's characterization of the issues related to Agent Clayton's Investigation Report. Cornell objects to the description of the conflict between the report and trial testimony, and so requests the Court to consider the issue *de novo*.

With respect to the potential discrepancies, the Magistrate Judge refers to "mere inconsistencies" between Agent Clayton's Investigation Report and his testimony. Cornell, in contrast, characterizes the two versions as "diametrically opposed" and argues that the use of the latter version by the Government rises to the level of a due process violation. [Doc. 283 at 5.][5/]

---

[5/]In his initial § 2255 petition, Cornell seems to be referring to discrepancies between Agent Clayton's Investigation Report of September 25, 2001 [*sic*], and his grand jury testimony of November 18, 2003. [Doc. 283 at 5.] In his reply regarding the § 2255 motion, he then seems to mix up references to Agent Clayton's grand jury testimony and his testimony at trial. [Doc. 288 at 2 ("The Government, in this case, secured Movant's convictions by allowing one
(continued...)

Case No. 1:03-CR-431-2; 1:07-CV-871
Gwin, J.

Referring to these potential discrepancies, this Court in an earlier order stated that "Clayton's testimony was inconsistent with his report of investigation . . . ." [Doc. 262 at 3.] Although Cornell relies on this Court's previously-expressed sympathy, [Doc. 331 at 6-7 (citing Doc. 262 at 7)], the Court here considers the issue anew, as the § 2255 petition provides the appropriate forum.

In his Investigation Report, dated September 24, 2001, Agent Clayton described the August 13, 2001 drug transaction as follows:

> 1. On 8/13/2001 [CS] received 154.06 grams of cocaine from Stanley CORNELL. CORNELL contacted the CS and informed the CS that CORNEL [sic] was going to advance the CS the cocaine. The CS contacted S/a [sic] Clayton and informed S/A Clayton that CORNELL was en route to meet the CS. S/A Clayton attempted to reach the meet location prior to CORNELL's arrival. While en route S/A Clayton was contacted by the CS and informed that CORNELL had arrived and had advanced the cocaine. S/A Clayton was informed that CORNELL had departed the area prior to S/A Clayton's arrival.
>
> 2. S/A Clayton instructed the CS to surrender the cocaine, Exhibit 2, to Det. Marv Lemeau. The CS surrendered the exhibit and the exhibit was tested by the Cleveland Police Department Special Investigations Unit . . . .

[Doc. 259-2.] The entire substantive section of the Investigation Report is only two pages, consisting of eight paragraphs, and the other six detail the payment arrangements for the cocaine. [Id.]

At trial, Clayton testified and was cross-examined in much more detail about this transaction.

---

[5]/(...continued)

of its chief witnesses to testify falsely *during trial*. Special Agent John Clayton of the Drug Enforcement Administration, (Agent Clayton), was allowed to fabricate, utter false statements, and knowing/intentionally testify falsely *before the Grand Jury* . . . The government knew he was lying and testifying contrary to what he'd *previously* stated *before the Grand Jury*. Yet, the government sanctioned and encouraged Agent Clayton to prevaricate by using the false testimony *in its opening statement* . . . See *Trial Transcript* . . . .") (emphasis added).] In his objections to the Magistrate Judge's Report and Recommendation, Cornell seems to focus solely on discrepancies between Clayton's Investigation Report and his trial testimony. [*See* Doc. 331 at 8-10.] No transcript of the grand jury testimony has been made part of the record or provided to this Court. However, because the Court understands from Cornell's filings that the Investigation report allegedly conflicts with *both* Clayton's grand jury *and* trial testimony, which were substantively the same, the Court will henceforth consider the alleged discrepancy between the Report and the trial testimony. *See also* Doc. 287 at 12 (arguing that any possible error in the grand jury proceeding would have been cured by the trial testimony and resulting jury verdict, citing *United States v. Mechanik*, 475 U.S. 66, 69-73 (1986)).

Case No. 1:03-CR-431-2; 1:07-CV-871
Gwin, J.

Upon learning that his confidential informant had spoken with Defendant Cornell about a drug transaction, Clayton claimed, "I went as fast as I could to my confidential source's residence." [Doc. 209 at 481-82.] Clayton continued:

> When I arrived at 118th . . . I didn't tell my confidential source I was there yet because I don't trust anybody.  I pulled up across the street and I saw Mr. Cornell on the sidewalk right in front of the driveway of my confidential source's residence now walking towards Kinsman, towards me . . . Mr. Cornell didn't see me.  He walked up Kinsman, looked both ways . . . I parked where he couldn't see me.  He walked across Kinsman into a bar . . . Mr. Cornell exits the bar, jumps in the car and they depart.

[Doc. 209 at 482-83.] After allegedly seeing Cornell leave the scene, Clayton testified he met with his confidential information and obtained the drugs Cornell had allegedly dropped off: "Mr. Pinson got to the residence, called me, departed the residence.  I followed him . . . we met in Shaker Heights . . . Mr. Pinson surrendered to me a brown paper bag that contained approximately 154 grams of cocaine." [Doc. 209 at 484.] On cross-examination, Clayton confirmed that he did not see Cornell take the bag with the cocaine into Pinson's house. [Doc. 209 at 511.] Clayton reiterated that he "saw Mr. Cornell departing what looked to be the residence of Mr. Pinson." [Id. at 516.] He described the event again:

> A. I didn't see [Cornell] in the driveway, I saw him on the sidewalk directly in front of the driveway walking toward Kinsman where I was expecting to see him.
>
> Q. You never saw him coming out of that house, did you?
>
> A. No, nor did I see him arrive there.

[Id. at 516.] Throughout his testimony, then, Clayton persisted in the same version of events - that he arrived at Pinson's house to see Cornell standing out front on the sidewalk, after which Cornell walked down the street, entered a bar, exited the bar, got into a car as the passenger, and left.

-11-

Case No. 1:03-CR-431-2; 1:07-CV-871
Gwin, J.

Cornell claims these versions of events by Agent Clayton, in his Investigation Report and his testimony, contradict.  In making this argument, Cornell repeatedly relies on the fact that the Investigation Report said, "CORNELL had departed the area prior to S/A Clayton's arrival." [Doc. 288 at 2-3, 13; Doc. 331 at 9-10.] Cornell also believes Clayton lied about seeing him at the scene because Pinson testified at trial that by the time Clayton arrived at Pinson's house, Cornell was already gone. [Doc. 209 at 544.]

However, all of these statements – the Investigation Report, Clayton's testimony, and Pinson's testimony – do not necessarily contradict each other.  They could all be true.  The Investigation Report says that while Clayton was en route, he was informed that Cornell had already arrived and advanced the cocaine. [Doc. 259-2 at ¶ 1.] This agrees with Clayton's testimony that he did not see Cornell arrive at the house, enter the house, take anything into the house, or exit the house.  [Doc. 209 at 511, 516.] To the extent that Cornell interprets the Investigation Report as saying that Clayton did not even see Cornell at the scene, because Cornell was already gone, he mischaracterizes the report.  The report does not say that Cornell had already departed when Clayton arrived.  It says "S/A Clayton *was informed* that CORNELL had departed the area prior to S/A Clayton's arrival."  (Emphasis added.)  This statement harmonizes perfectly with Clayton's testimony: "When I arrived at 118th . . . I didn't tell my confidential source I was there yet because I don't trust anybody." If that testimony was true, Pinson would not have known Clayton had arrived in time to see Cornell leaving the scene; Pinson's testimony may have been based on what he thought was the truth – that Clayton arrived too late to see Cornell.

The fact remains that the Investigation Report does not include all the information in Clayton's testimony regarding seeing Cornell at the scene.  One would have expected that

Case No. 1:03-CR-431-2; 1:07-CV-871
Gwin, J.

information to be included in the report.  However, the report was merely a summary of events, so it is possible the Agent did not include all the details.  While the Court agrees that one might infer from the report, based on its brevity and what *is* included ("S/A Clayton was informed that CORNELL had departed the area prior to S/A Clayton's arrival"), that Clayton did not see Cornell at the scene, that simply is not what the report says.  Thus it is not obvious that the report is even inconsistent with the trial testimony, much less that it is blatantly contradictory.

The other inconsistencies that Cornell notes in his reply regarding his § 2255 petition, including to whom and when the cocaine was surrendered to the authorities, and what kind of bag the cocaine was in, are inconsistent only as between the testimony of Agent Clayton and Pinson. [*See* Doc. 288 at 13.] In both his report and his testimony, Clayton explained that Pinson surrendered the cocaine to Detective Marv Lemeau. [Doc. 259-2 at ¶ 2; Doc. 209 at 484.]  The report offers no additional details on the surrender, while in his testimony, Clayton explains that he, too, was also present at the surrender and that it occurred in Shaker Heights, soon after Cornell left the scene near Pinson's house. [Doc. 209 at 484.] Pinson, however, testified that Clayton did not confiscate the drugs Cornell had delivered for a few days. [Doc. 209 at 545.]

Based on this review of the report and testimony, the Court concludes that there *may* have been inconsistencies between the two, but there were not clear contradictions.  Inconsistencies are common at criminal trials.  Witnesses do not always agree in their descriptions of events, and witnesses do not always repeat the same exact description as they provided in previous accounts. That is what cross-examination is for, and then credibility determinations are left to the jury.  In this case, the defense attorney had Clayton's Investigation Report.  Defense counsel could have cross-examined Clayton as to whether his previous report contradicted what he said on the stand.  Defense

Case No. 1:03-CR-431-2; 1:07-CV-871
Gwin, J.

counsel did, in fact, cross-examine Clayton on his account of the events, and Clayton persisted in his story that he saw Cornell depart the scene. [Doc. 209 at 516.] Had he been cross-examined concerning the failure to mention those details in the report, Clayton may have had the opportunity to explain those omissions.  Nonetheless, the fact that the prosecution also had the report and knew of its contents and then put Clayton on the stand to give his testimony does not remotely rise to the level of a due process violation.  There is no evidence to suggest the prosecutor knowingly proffered false testimony because there is no evidence that Clayton's testimony was false.  There is not even enough evidence to show it was inconsistent.

*B. Ground One - Due Process Violation*

In his § 2255 petition, Cornell's first ground for relief alleges that he was denied due process because the Government used the false testimony of Agent Clayton to convict Cornell. [Doc. 283 at 5.] The Magistrate Judge notes, and Cornell concedes, that Cornell failed to raise this issue either at trial or on direct appeal. [Doc. 330 at 24; Doc. 331 at 7.] The Magistrate Judge, therefore, recommends dismissing the claim as procedurally defaulted. [Doc. 330 at 25-26.] Cornell, in his objections, contends his counsel was ineffective and this argued ineffectiveness excuses the procedural default. [Doc. 331 at 7-8.] Whether Cornell's trial counsel was ineffective for failing to properly handle the delayed disclosure of Agent Clayton's report is addressed below, with respect to Cornell's second and third grounds for relief.  Here, the Court assumes without deciding that Cornell's due process claim was not procedurally defaulted, and so addresses the claim on the merits.

The claim fails on the merits because Cornell has made no showing that the Government used false testimony to convict him.  Clayton's Investigation Report and his testimony do not even necessarily conflict, in which case there would be no false testimony.  Even if there are

-14-

Case No. 1:03-CR-431-2; 1:07-CV-871
Gwin, J.

inconsistencies between the two, however, there is no evidence that Clayton's testimony itself was actually false. "[M]ere inconsistences in testimony by government witness do not establish knowing use of false testimony." *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989). Therefore, even assuming Cornell has not procedurally defaulted his due process claim by failing to raise it at trial or on direct appeal, the claim is denied.

*C. Grounds Two & Three - Ineffective Assistance of Counsel*

To prevail on a § 2255 claim that counsel's assistance was constitutionally ineffective, a movant must satisfy a two-pronged test. First, he must show that counsel's performance was deficient by demonstrating that "counsel made errors so serious that he was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In evaluating this charge, the court must determine whether, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance . . . . [, keeping in mind] that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case." *Id.* at 690. Judicial scrutiny of counsel's performance is highly deferential, however, and there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *See id.* at 689.

Second, the movant must show that counsel's deficient performance prejudiced the defendant by demonstrating that "counsel's errors were so serious as to deprive the defendant of a fair trial . . . ." *Id.* at 687. The movant meets the second prong of the test by establishing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine

Case No. 1:03-CR-431-2; 1:07-CV-871
Gwin, J.

confidence in the outcome." *Id.* at 694.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." *Id.* at 697.

In his objection to the Report and Recommendation, Cornell alleges that counsel was deficient for: "(1) not objecting to the untimely disclosure [(including the Investigation Report);] (2) failing to request a continuance to investigate the disclosed information[;] and (3) failing to effectively use the information to discredit Agent Clayton's trial testimony." [Doc. 331 at 10.]  All of Cornell's claims fail due to lack of sufficient prejudice.  At most, if counsel had objected to the delayed disclosure and requested and been granted a continuance, he might then have more aggressively cross-examined Clayton as to his recollection of events.  But first, as noted by the Magistrate Judge, defense counsel did in fact pursue discrepancies in cross-examination. [Doc. 330 at 26-27.]  And even if defense counsel had confronted Clayton explicitly about the alleged contradiction between the report and Clayton's testimony, Clayton could have easily explained that there were in fact no inconsistencies.  As discussed above, nothing in Agent Clayton's report, the pertinent part of the delayed disclosure, was necessarily inconsistent with his testimony.  Both can be harmonized.  Finally, as the Magistrate Judge noted, there was ample evidence "quite apart from any testimony of either Clayton or Pinson concerning Cornell taking money for drugs," including an audio tape played for the jury. [Doc. 330 at 27.]  "As such, regardless of the amount of time the defense had to assess it, the evidence likely would have had marginal utility to the defense." *Ayers v. Bradshaw*, 2007 WL 2840399, at *5 (N.D. Ohio, Sept. 27, 2007).  Because the claims of ineffective assistance of counsel fail to show sufficient prejudice, the Court need not consider whether defense counsel acted deficiently in failing to object to the delayed disclosure or request a continuance.

-16-

Case No. 1:03-CR-431-2; 1:07-CV-871
Gwin, J.

*D. Supplement/Amend*

The Court also denies Cornell's motion to supplement his § 2255 petition with allegations regarding false testimony by Agent Lee Lucas.  Because Cornell's motion actually seeks to add new substantive claims, rather than just augment the existing claims, the Court treats this motion as a motion to amend.  As such, the Court denies the motion on the grounds that adding the new claim would be futile.  *See* Fed. R. Civ. P. 15(a).  The Court bases this conclusion on the same reasoning found in the Court's July 25, 2008 order denying the Defendant's motion for judgment of acquittal and new trial. [Doc. 315 at 8-9.] Although the procedural posture differs in the § 2255 forum, the Court's reasoning and conclusion remain the same.  Agent Lucas played but a minor role in testifying against Defendant Cornell at trial, and there was ample other evidence and testimony to convict Cornell. [*See* Doc. 315 at 8-9.]  In particular, at least nine other people testified regarding their involvement in the drug trade with Cornell.  [Id.] Even if the testimony of Agent Lucas at Cornell's trial was false, that would be insufficient to set aside Cornell's conviction.[6/]  In reaching this conclusion, however, the Court notes that, in the instant motion, Cornell still "does not point to any specific problems with his case [with respect to Lucas' involvement]."  [Id.]  Because the Court denies the motion to supplement, the Court dismisses the motion to compel discovery as moot to the extent it involves discovery on this additional claim and related to Agent Lucas.

*E. Compel Discovery*

Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts

---

[6/]Cornell's argument that he should be allowed to amend because the combined effect of Agent Lucas and Agent Clayton's misconduct in Cornell's case would entitle Cornell to § 2255 relief is not well-taken. As discussed above, Cornell does not make a sufficient showing of *any* misconduct by Clayton.  Thus, the combined effect of misconduct by the two agents would be no greater than any possible misconduct by Agent Lucas alone, which the Court deems insufficient to undermine confidence in the trial's outcome.

Case No. 1:03-CR-431-2; 1:07-CV-871
Gwin, J.

provides that "[a] judge *may*, for good cause, authorize a party to conduct discovery." (Emphasis added.) The Sixth Circuit has construed "for good cause" to mean if the petitioner "presents specific allegations showing reason to believe that the facts, if fully developed, may lead the district court to believe that federal habeas relief is appropriate." *Lott v. Coyle*, 261 F.3d 594, 602 (6th Cir. 2001) (construing the analogous rule for § 2254 proceedings); *Lynott v. Story*, 929 F.2d 228, 232 (6th Cir. 1991). In fact, "[i]n [such] circumstances, it is the *duty* of the Court to provide the necessary facilities and procedures for an adequate inquiry." *Byrd v. Collins*, 209 F.3d 486, 550 (6th Cir. 2000) (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)).

Cornell seeks additional discovery concerning the allegedly inconsistent and potentially contradictory statements by Agent Clayton and witness Darrell Pinson.[7] In his motion, Cornell requests a broad array of material related to Agent Clayton, including all of Clayton's notes and reports from the investigation and any complaints against or investigations into Agent Clayton, along with his employment file. [Doc. 292.] Further, Cornell requests all grand jury testimony from his case. [Id.]

The Government avers that in advance of the trial, the prosecution provided Cornell's defense counsel all materials relevant to his case to which he was entitled. [Doc. 296 at 2.] The Government further contends that Cornell makes only conclusory statements with regard to the materiality of the requested documents, and thereby fails to make the necessary *prima facie* showing. [Id. (citing *United States v. Philip*, 948 F.2d 241, 250 (6th Cir. 1991)).] Specifically, the Government refers to Rule 16 of the Federal Rules of Criminal Procedure which "does not authorize

---

[7] As discussed in the previous section, Cornell's request for discovery related to Agent Lucas and the proposed additional claim is dismissed as moot because the Court denies the motion to supplement.

Case No. 1:03-CR-431-2; 1:07-CV-871
Gwin, J.

the discovery or inspection of reports, memoranda, or other internal government documents made

by an attorney for the government or other government agent in connection with investigating or

prosecuting the case" except as required under the Jencks Act.  [Doc. 296 at 3 (quoting FED. R.

CRIM. P. 16(a)(2)).]  Nor must the Government turn over all transcripts of grand jury testimony,

according to Rule 16(a)(3). [Doc. 296 at 3.] As to Agent Clayton's personnel files, the Government

argues that Cornell's mere speculation that the files contain information material to his case is

insufficient to require discovery of the files. [Id. at 8.]

        The Federal Rules of Criminal Procedure do not require the Government to disclose the

information Cornell seeks in the instant motion.  Moreover, before the trial, the Government had

already provided Cornell with Agent Clayton's Investigation Report and grand jury testimony.  With

respect to the Rule 6 requirement that a petitioner show "good cause" for discovery on a habeas

petition, Cornell's reliance on *Bracy v. Gramley*, 520 U.S. 899 (1997), is misplaced.  In that case,

the petitioner had supported his discovery request not only with evidence of a judge's corruption in

other similar cases, but also evidence that the judge "was actually biased *in petitioner's own case*."

*Id.* at 909.   In determining that the district court in that case had abused its discretion by not

permitting Rule 6 discovery, the Supreme Court emphasized the need for the petitioner to present

*specific allegations*, rather than merely conclusory statements. *Id.*  Here, for the reasons previously

discussed with respect to any potential inconsistencies between Clayton's report, his testimony, and

Pinson's testimony, Cornell fails to provide sufficient evidence of Clayton's false statements or

corruption in Cornell's case.  In its discretion, then, the Court denies the motion for additional

discovery.

*F. Recusal*

-19-

Case No. 1:03-CR-431-2; 1:07-CV-871
Gwin, J.

The Sixth Circuit recently confirmed that "[t]he disqualification of Government counsel is a drastic measure . . . ."  *Cope v. United States*, 272 Fed. App'x 445, 449 (6th Cir. 2008) (citing *United States v. Bolden*, 353 F.3d 870, 875-76 (10th Cir. 2003)).  Courts should impose disqualification only when necessary, and therefore courts have allowed the remedy in only limited circumstances.  *Bolden*, 353 F.3d at 878.  Before disqualifying attorneys from the United States Attorney's office, a "district court must make attorney-specific factual findings and legal conclusions."  *Id.* at 880.  Further, the Sixth Circuit has held that "[a] scenario in which the court can disqualify an entire United States Attorney's office will rarely, if ever, present itself."  *Cope*, 272 Fed. App'x at 449.

In his motion for recusal, Cornell argues that AUSA Joseph Pinjuh knowingly proffered false testimony by Agent Clayton because Pinjuh knew of Clayton's preexisting Investigation Report and yet "allowed" Clayton to testify to different facts before the grand jury and at trial.  The operative facts that were allegedly contradictory in the Clayton's two different versions were whether he saw Defendant Cornell at Pinson's residence where the drug transaction occurred and whether Clayton immediately took possession of the cocaine after the transaction. [Doc. 293 at 2-3.]  In order to prevail on this claim, Cornell must show that Clayton's testimony was false, was material, and that AUSA Pinjuh knew it was false.  *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998).  Cornell fails.

As discussed above, these differences in Agent Clayton's Investigation Report and his testimony were not necessarily contradictory.  They could have been merely unclear or inconsistent. "[M]ere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony."  *Id.* (quoting *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989)).  Cornell has not shown that Clayton's testimony was actually false; even though Pinson testified to the

-20-

Case No. 1:03-CR-431-2; 1:07-CV-871
Gwin, J.

contrary, it was up to the jury to decide whom to believe.  More importantly, as the Magistrate Judge

noted, there is no evidence that the Government attempted to conceal any of Agent Clayton's earlier

statements - defense counsel had them when Clayton gave his testimony.   This absence of

concealment weighs against the conclusion that the government knowingly used false testimony.

*Lochmondy*, 890 F.2d at 822-23.  Accordingly, the Court cannot make any attorney-specific factual

or legal findings concerning AUSA Pinjuh sufficient to support the motion to disqualify the attorney

as being "necessary."  Nor does the Court find this to be remotely close to the extremely rare instance

justifying the disqualification of an entire USA's office.

V. Conclusion

For these reasons, the Court **ADOPTS** the Magistrate's Report and Recommendation, and

**DENIES** Defendant Cornell's § 2255 motion. [Doc. 283.]  In addition, the Court **DENIES** Cornell's

motion to supplement the § 2255 motion, [Doc. 289], and **DENIES** his motion for the recusal of the

AUSA, [Doc. 293].  Finally, the Court **DISMISSES IN PART** as moot and **DENIES IN PART** the

Defendant's motion to compel discovery. [Doc. 292.]  Because the record in the case establishes that

Cornell is entitled to no relief, the Court denies his request for an evidentiary hearing. Further, the

Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be

taken in good faith, and no basis exists upon which to issue a certificate of appealability.  28 U.S.C.

§ 2253(c); Fed. R. App. P. 22(b).

IT IS SO ORDERED.

Dated: June 30, 2009                                       s/        *James S. Gwin*
                                                                      JAMES S. GWIN
                                                                      UNITED STATES DISTRICT JUDGE