UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | : | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 1:03-cr-00431-2 |
| | : | |
| Plaintiff, | : | OPINION & ORDER |
| | : | [Resolving Doc. 560] |
| v. | : | |
| | : | |
| STANLEY CORNELL, | : | |
| | : | |
| Defendant. | : | |
| | : | |

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

Over twenty years ago, a jury convicted Defendant Stanley Cornell on three charges related to a cocaine distribution conspiracy. At that time, the mandatory sentence for Cornell's offenses was life in prison, and the Court sentenced Cornell to life. Now, after spending the past two decades in prison, Cornell moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).[1] The government opposed.[2] And Cornell replied.[3]

Because Cornell's life sentence is excessively long under today's sentencing standards, and Cornell has already spent a significant portion of his life in prison for his drug offenses, the Court **GRANTS** Cornell's motion.

## I. BACKGROUND

On November 19, 2003, the government indicted Defendant Cornell on three drug charges.[4] The same day, law enforcement agents arrested Cornell.[5] Cornell has been held in custody ever since.

---

[1] Doc. 560.
[2] Doc. 563.
[3] Docs. 566, 567.
[4] Doc. 1.
[5] Doc. 40.

Case No. 1:03-cr-00431-2
GWIN, J.

On February 27, 2004, a jury found Cornell guilty on all three charges.[6] Specifically, the jury found that Cornell conspired to distribute at least 50 grams of crack cocaine and at least 5 kilograms of cocaine.[7]

On May 13, 2004, the Court sentenced Defendant Cornell.[8] When the Court issued its sentence, Cornell faced a mandatory life sentence for two reasons. First, the statutory minimum was life imprisonment due to Cornell's prior felony drug convictions and the amount of cocaine involved in this case.[9] Second, Cornell's Sentencing Guidelines range was also life imprisonment,[10] and at the time, the Sentencing Guidelines were mandatory. Therefore, the Court sentenced Cornell to life in prison.[11]

## II.   LEGAL STANDARD

Before a defendant can bring a compassionate release motion under § 3582(c)(1)(A)(i), he must first exhaust his administrative remedies.[12] A defendant who has exhausted his administrative remedies is eligible for compassionate release only if he demonstrates that (1) there are "extraordinary and compelling reasons" supporting a sentence reduction, and (2) that any sentence reduction would be consistent with the Sentencing Commission's applicable policy statements.[13]

Even if the defendant is eligible, courts may not grant compassionate release before weighing the 18 U.S.C. § 3553(a) factors and determining that those factors support a sentence reduction.[14]

---

[6] Doc. 156.
[7] *Id.* at PageID #: 571
[8] Doc. 216.
[9] 21 U.S.C. § 841(b)(1)(A), Pub. L. No. 107-273, 116 Stat. 1805, 1809 (2002) (current version amended 2022).
[10] Pre-Sentence Report ¶ 96.
[11] Doc. 217.
[12] 18 U.S.C. § 3582(c)(1)(A).
[13] 18 U.S.C. § 3582(c)(1)(A)(i).
[14] *Id.*

Case No. 1:03-cr-00431-2
GWIN, J.

### III. DISCUSSION

Because the government concedes that Defendant Cornell properly exhausted his administrative remedies, the Court proceeds directly to analyze Cornell's eligibility for compassionate release and the § 3553(a) factors.

### A. Compassionate Release Eligibility

The Sentencing Commission issued its compassionate release policy statement as U.S. Sentencing Guidelines § 1B1.13. The policy statement identifies six categories of extraordinary and compelling reasons.[15]

Defendant Cornell argues that he qualifies for release under two policy statement categories. Primarily, Cornell argues that his prostate cancer and heart disease are an extraordinary medical circumstance under Sentencing Guidelines § 1B1.13(b)(1).[16]

Secondarily, Cornell says that, if sentenced today, he would not be subject to a mandatory life sentence.[17] Cornell says that the First Step Act reduced the statutory minimum and *United States v. Booker*[18]—decided less than a year after Cornell's sentencing—invalidated the statutory provision making the Sentencing Guidelines mandatory. Although Cornell does not expressly identify how this secondary argument fits into the extraordinary and compelling reason categories, the Court construes that argument as raising a § 1B1.13(b)(6) issue. Under this category, certain "unusually long sentences" are extraordinary and compelling.

---

[15] U.S.S.G. § 1B1.13(b).
[16] Doc. 560 at 8–10.
[17] *Id.* at 12–13.
[18] 543 U.S. 220 (2005).

- 3 -

Case No. 1:03-cr-00431-2
GWIN, J.

Beginning with Cornell's main argument, the Court finds that Cornell's medical conditions are not extraordinary and compelling.[19] For one, Cornell gives little detail about his heart disease. Neither Cornell's briefs nor his medical records show that his heart disease is so severe and unmanageable that it rises to the extraordinary and compelling level.

Cornell's prostate cancer is also not extraordinary and compelling. Cornell argues that the Bureau of Prisons cannot provide adequate treatment for his prostate cancer.[20] Medical records show otherwise.

According to those records, the Bureau diagnosed Cornell with prostate cancer in late 2021.[21] From May 2022 to July 2022, the Bureau gave Cornell radiation therapy.[22] And that radiation therapy appears to have worked, lowering Cornell's prostate test results to normal levels in August 2022.[23]

While Cornell's later prostate test results increased again,[24] suggesting some prostate issue may have returned, the above events show that the Bureau of Prisons is able to treat Cornell's prostate cancer. Cornell's transfer from Butner Federal Medical Center to the less medically specialized Terra Haute U.S. Penitentiary[25] does not change this analysis. If Defendant Cornell needs the additional medical resources at Butner, the Bureau of Prisons can transfer him back.

Although Defendant Cornell's medical argument fails, Cornell's secondary argument about his unusually long sentence succeeds.

---

[19] The Court previously found that there were extraordinary and compelling reasons for compassionate release when combining Defendant Cornell's heart condition with the Covid-19 public health emergency. Doc. 530 at 4. Because the Covid-19 emergency has ended, the Court's previous finding no longer applies.
[20] Doc. 560 at 8–9.
[21] Doc. 560-1 at PageID #: 2748–59.
[22] *Id.* at PageID #: 2750.
[23] *Id.* at PageID #: 2751.
[24] *Id.* at PageID #: 2752–56.
[25] Doc. 567.

- 4 -

Case No. 1:03-cr-00431-2
GWIN, J.

Under the Sentencing Commission's recent policy statement amendments, an unusually long sentence can be extraordinary and compelling when (1) a defendant has served at least 10 years of his sentence, (2) there have been legal changes (other than nonretroactive Sentencing Guidelines amendments) that could affect the defendant's sentence, and (3) due to those legal changes and "after full consideration of the defendant's individualized circumstances," there would be a "gross disparity between the sentence being served and the sentence likely to be imposed at the time the [compassionate release] motion is filed."[26]

Here, Defendant Cornell satisfies the first element because he has served at least 10 years of his life sentence. He has been incarcerated more than twenty years and since November 19, 2003.[27]

There have also been two legal changes that could affect how Cornell would be sentenced if sentencing went forward today. As discussed above, the Supreme Court's *Booker* decision and the First Step Act mean that Cornell would not be subject to mandatory life imprisonment if sentenced today. Rather, because there is no finding that Cornell's offenses caused death or serious bodily injury,[28] and he had one qualifying serious drug felony,[29] his mandatory minimum sentence would be 15 years if he were sentenced today.[30]

Although the parties do not address the issue, the Court observes that *United States v. McCall*[31] could be interpreted as barring courts from considering any nonretroactive legal

---

[26] U.S.S.G. § 1B1.13(b)(6).
[27] Doc. 40.
[28] *See generally* Pre-Sentence Report.
[29] To qualify as a "serious drug felony" under the First Step Act, a prior offense must have resulted in more than 12 months imprisonment, among other criteria. 21 U.S.C. § 802(57). Of the five prior offenses that the government identified for sentencing enhancement purposes, Doc. 119, only one qualifies as a serious drug felony based on length of imprisonment. Pre-Sentence Report ¶¶ 44–45, 47, 49, 52.
[30] 21 U.S.C. § 841(b)(1)(A) (current version).
[31] 56 F.4th 1048, 1066 (6th Cir. 2022) (en banc).

- 5 -

Case No. 1:03-cr-00431-2
GWIN, J.

developments when conducting an extraordinary and compelling analysis. However, the Court finds it appropriate to consider *Booker* and the First Step Act here for two reasons.

First, *McCall* recognized that Congress had explicitly delegated the ability to define "extraordinary and compelling" to the Sentencing Commission.[32] When the Sixth Circuit decided *McCall*, the Sentencing Commission had not included unusually long sentences as potential extraordinary and compelling reasons. Now though, exercising the power delegated by Congress, the Sentencing Commission has expressly recognized unusually long sentences as extraordinary and compelling.[33]

Second, *McCall* reached its conclusion by considering three analytical themes—text, structure, and history[34]—that the Sentencing Commission's revised policy statement undermines.

*McCall* reasoned that structure supported excluding all legal changes because the compassionate release statute did not explicitly say that courts should retroactively consider legal changes.[35] The *McCall* court's textual analysis also relied on the fact that the statute did not provide an express definition for "extraordinary and compelling."[36] The revised policy statement now provides that explicit instruction.

The remainder of *McCall*'s reasoning draws on the idea that background legal principles inform statutory meaning.[37] The background principle that *McCall* relied on and repeatedly cited is that new, judicially-decided criminal procedure rules generally do not

---

[32] *McCall*, 56 F.4th at 1053 (quoting 28 U.S.C. § 994(t)).
[33] U.S.S.G. § 1B1.13(b)(6).
[34] *McCall*, 56 F.4th at 1055–60.
[35] *Id.* at 1056.
[36] *Id.* at 1055.
[37] *Id.* at 1055, 1060.

- 6 -

Case No. 1:03-cr-00431-2
GWIN, J.

apply retroactively.[38] Because the background principle is specific to criminal procedure rules, to the extent *McCall* still has force, *McCall* would only prevent courts from considering judicial decisions that make nonretroactive criminal procedure rule changes as extraordinary and compelling.

Neither *Booker* nor the First Step Act were changes in criminal procedure. *Booker* invalidated two statutory provisions based on a constitutional holding.[39] And the First Step Act was a statutory change. Therefore, both are properly considered, and Cornell satisfies the second element for an unusually long sentence as well.

So, the only element left to consider in deciding whether there are extraordinary and compelling reasons is whether, in light of Cornell's "individualized circumstances," there would be a "gross disparity between the sentence being served and the sentence likely to be imposed" today.[40] The Court considers Cornell's individualized circumstances below through the § 3553(a) factors.

### B. Section 3553(a) Factors

Overall, the § 3553(a) factors now support reducing Defendant Cornell's sentence from life imprisonment to a term of years. Even though the Court previously denied compassionate release on § 3553(a) grounds,[41] there have been two material changes since then.

---

[38] *McCall*, 56 F.4th at 1056–58, 1061.
[39] 543 U.S. at 245.
[40] U.S.S.G. § 1B1.13(b)(6).
[41] Doc. 530.

Case No. 1:03-cr-00431-2
GWIN, J.

First, the record now includes Cornell's PATTERN scores. The Bureau of Prisons developed the PATTERN algorithm scores to assess recidivism risk, as required by the First Step Act.[42] And Cornell's PATTERN scores that show that he is at a low recidivism risk.[43]

In previously denying compassionate release, the Court heavily weighed Cornell's criminal history and associated recidivism risk.[44] However, the Court did not have any evidence showing how Cornell had changed since the Court originally sentenced Cornell. The PATTERN scores account for Cornell's changes and rehabilitation.[45]

Just as importantly, Cornell's PATTERN scores do not rely exclusively on Cornell's rehabilitation. In addition to accounting for Cornell's changes, the PATTERN scores also account for Cornell's extensive criminal history.[46] In fact, Cornell's criminal history contributes the most to Cornell's PATTERN scores.[47] So when the PATTERN scores predict that Cornell is at a low recidivism risk, they are doing so even though Cornell's criminal history plays a large role in Cornell's scores.

The government argues that PATTERN should not influence the Court because it fails to account for other individual factors and is therefore "a flawed method of calculating recidivism risk."[48] True enough, PATTERN does not account for *everything* that may possibly be relevant to recidivism risk. But that is also true of any recidivism assessment, whether done in an ad hoc manner by a judge or based on statistically tested scores and tools.

---

[42] First Step Act of 2018 § 101, Pub. L. 115-391, 132 Stat. 5194–208 (codified at 18 U.S.C. §§ 3631–35).
[43] *See* Doc. 560-2 at PageID #: 2764; *Cut Points Used for PATTERN v. 1.3*, Bureau of Prisons, https://www.bop.gov/inmates/fsa/docs/fsa_cut_points.pdf?v=1.3 (last accessed July 17, 2024).
[44] Doc. 530 at 5–6.
[45] *See* Doc. 560-2 at PageID #: 2764 (accounting for factors such as incident reports and educational programs completed while incarcerated).
[46] *See id.* (scoring criminal history points and history of violence).
[47] *Id.*
[48] Doc. 562 at 13 (quoting *United States v. Bass*, 17 F.4th 629, 640 (6th Cir. 2021)).

- 8 -

Case No. 1:03-cr-00431-2
GWIN, J.

Therefore, PATTERN's inability to account for every possible variable does not undermine PATTERN's value as one input into the Court's § 3553(a) analysis. The Bureau of Prisons continuously updates and refines PATTERN scores, and the Department of Justice regularly validates and reviews those scores.[49] This rigorous testing and validation makes PATTERN a persuasive data point for courts to consider.

With the benefit of Cornell's PATTERN scores, the Court finds that "the nature and circumstances of [Cornell's] offense and [Cornell's] history and characteristics"[50] now favor a sentence reduction.

The second significant change in the circumstances is that over three years have passed since the Court previously denied compassionate release, and Cornell is no longer requesting a sentence reduction to time served.[51]

If the Court had granted Cornell's previous request for a sentence reduction to time served, Cornell would have been released after serving about 17 years. Given the large amount of cocaine involved in Cornell's offense as well as Cornell's leadership role,[52] 17 years would not have adequately reflected the seriousness of Cornell's offense nor would it have afforded adequate deterrence.[53] Moreover, releasing Cornell at 17 years would have created a sentencing disparity where Cornell would have received a shorter sentence than similarly situated defendants today.[54]

---

[49] *See 2022 Review and Revalidation of the First Step Act Risk Assessment Tool*, Nat'l Inst. of Justice (Mar. 2023), https://www.ojp.gov/pdffiles1/nij/305720.pdf.
[50] 18 U.S.C. § 3553(a)(1).
[51] Doc. 560 at 6 (counsel's supplement to Cornell's pro se motion, requesting that the Court consider Cornell's pro se motion); Doc. 543 at 4 (Cornell's pro se motion, which requested a sentence reduction to a term of years as an alternative to time served).
[52] Pre-Sentence Report ¶¶ 20, 30.
[53] *See* 18 U.S.C. § 3553(a)(2)(A)–(B).
[54] *See* 18 U.S.C. § 3553(a)(6).

Case No. 1:03-cr-00431-2
GWIN, J.

Now though, Cornell is only asking for a sentence reduction from life to a term of years. The Court is therefore able to choose a term of years that adequately reflects Cornell's offenses and criminal history while avoiding sentencing disparities.

In conclusion, Cornell's extensive criminal history and the seriousness of Cornell's offenses weigh in favor of a significant sentence. But a life sentence is still more than is necessary to reflect the seriousness of Cornell's offenses and to provide deterrence. Thus, the Court's above analysis shows that the § 3553(a) favor a sentence reduction.

### C. Sentence Reduction Amount

Having found that a life sentence is more than necessary, the final remaining question is whether there is a gross disparity between Cornell's current life sentence and the sentence Cornell would receive today.

Given the Court's § 3553(a) analysis above, and because the Court concludes that Cornell presents a reduced risk to the public if released under the terms of his supervised release,[55] the Court finds that a 250-month sentence would be appropriate.

There is a gross disparity between life and 250 months, so Cornell satisfies the last element for an unusually long sentence and has therefore shown extraordinary and compelling reasons.

---

[55] In reaching this conclusion, the Court considered the factors in 18 U.S.C. § 3142(g)—much of the Court's § 3553(a) analysis applies to § 3142(g).

- 10 -

Case No. 1:03-cr-00431-2
GWIN, J.

## IV. CONCLUSION

For the reasons above, the Court **GRANTS** Defendant Cornell's compassionate release motion. The Court **REDUCES** Cornell's sentence to 250 months.[56] All other terms of Cornell's judgment, including supervised release, remain unchanged.

IT IS SO ORDERED.

Dated: July 25, 2024               *s/     James S. Gwin*
                                   JAMES S. GWIN
                                   UNITED STATES DISTRICT JUDGE

---

[56] The Court independently concluded that 250 months would be an appropriate sentence without considering any nonretroactive Sentencing Guidelines amendments. Since nonretroactive Guidelines amendments can inform the extent of a sentence reduction though, U.S.S.G. § 1B1.13(c), the Court uses Cornell's revised Guidelines range as a cross-check for the Court's sentence reduction decision. As the Court previously found, Cornell's current Guidelines range would be 360 months to life. Doc. 530 at 5. Although a 250-month sentence is a downward variance from the Guidelines range, it is a reasonable variance given the Court's § 3553(a) analysis.

- 11 -